UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI SKIKO,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:11-cv-00638 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT, MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF TERRI SKIKO |

Terri Lynn Skiko ("Plaintiff") asserts she is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred in finding Plaintiff's testimony lacked credibility. Therefore, Plaintiff seeks review of the administrative decision denying her claims for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

### PROCEDURAL HISTORY[1]

Plaintiff filed application for disability insurance benefits and supplemental security income on May 2, 2008, alleging disability beginning December 15, 2007. AR at 84-97. The Social Security Administration denied her claims initially and upon reconsideration. *Id.* at 38-52. After requesting a

---
[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

hearing, Plaintiff testified before an ALJ on May 10, 2010. *Id.* at 21-37. The ALJ determined Plaintiff was not disabled, and issued an order denying benefits on July 10, 2010. *Id.* at 5-19. Plaintiff requested review of the ALJ's decision by the Appeals Council of Social Security, which was denied on February 11, 2011. *Id.* at 1-4. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520(a), 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* In making these determinations, the ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 404.927, 416.927.

**A.  Relevant Medical Evidence**

Dr. Helen Patterson completed a psychiatric review technique on July 21, 2008. AR at 268-81. She observed Plaintiff suffered from an affective disorder and substance abuse addiction, which was in early remission. *Id.* at 268, 274. Dr. Patterson found Plaintiff did not have any restrictions in her activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. *Id.* at 276. Specifically, Dr. Patterson noted Plaintiff was "able to care for her own needs" and "[a]ble to prepare simple meals." *Id.* at 278. She noted Plaintiff needed to be reminded to do chores and could not concentrate sufficiently to drive, although Plaintiff drove herself to her doctor appointment. *Id.* In addition, Plaintiff had recently overdosed, but had not taken any Vicodin since that time. *Id.* Based upon these observations, Dr. Patterson opined Plaintiff was able to perform simple repetitive tasks. *Id.* at 280-81.

On October 17, 2008, Dr. Cynthia Fowler performed a comprehensive psychiatric evaluation. AR at 301-05. Plaintiff's chief complaint was that she was "mentally unstable." *Id.* at 301. Plaintiff told Dr. Fowler she had "always been depressed," but "her symptoms worsened over the past year."

*Id.* Further Plaintiff reported she had "low energy, poor concentration and focus, and suicidal ideation without current intent." *Id.* Plaintiff informed Dr. Fowler that she had "'minor' improvement with the medications." *Id.* at 302. She had a Vicodin dependence, but reported her last use was on March 20, 2008. *Id.* at 302-03. With regard to her activities of daily living, Plaintiff reported she went to the store if her mother asked, played with her dogs, and helped with chores. *Id.* However, Plaintiff told Dr. Fowler that her family did not allow her to do any cooking because "they do not want her around any knives." *Id.* at 304.

Dr. Fowler observed Plaintiff's "thoughts appeared linear and organized," without evidence of psychoses. AR at 303. Dr. Fowler tested Plaintiff's memory and intellectual functioning and Plaintiff "recalled 3/3 objects after five minutes." *Id.* Dr. Fowler opined Plaintiff's concentration, persistence, and pace was "[a]dequate throughout the interview." *Id.* According to Dr. Fowler, Plaintiff "appeared to have the ability to perform simple and repetitive tasks." *Id.* at 304. Further, Dr. Fowler opined "[s]he was able to accept instruction and should be able to interact appropriately with coworkers and the public," thought Plaintiff had "mild impairment in her ability to manage the stress of a work environment." *Id.*

On November 28, 2008, Dr. Morris reviewed Plaintiff's medical records, and noted she had "only minimal limitations in her functioning secondary to her psych [disorder]." AR at 307. Therefore, Dr. Morris opined Dr. Patterson's assessment "remains appropriate," and affirmed the assessment that Plaintiff could perform simple and repetitive tasks. *Id.*

Dr. George Molina offered a psychiatric/ psychological medical source statement on March 10, 2010. AR at 389-90. Dr. Molina noted he had been Plaintiff's primary care physician since July 16m 2009. *Id.* at 389. According to Dr. Molina, Plaintiff would have trouble "communicating [with] supervisors and peers." *Id.* Further, he opined Plaintiff "[d]oesn't do well under stress." *Id.* However, Dr. Molina did not offer any further opinion regarding Plaintiff's ability to understand, remember, and carry out either simple or complex job instructions. *Id.*

**B.  Hearing Testimony**

Plaintiff testified before the ALJ at a hearing on May 10, 2010. AR at 22. Plaintiff reported she last worked as manager and waitress at a restaurant. *Id.* at 24-25. She believed she was unable to

work there any longer because she "started getting very depressed" and had trouble with people who "weren't doing things the way [she] wanted them to do things." *Id.* at 24. Plaintiff said she "ended up quitting" because she knew she was not doing a good job. *Id.* at 25.

She believed she was unable to work any job eight hours a day, five days a week because she had "a lot of pain" in her back and legs, and had "gained a ton of weight." AR at 25. In addition, Plaintiff reported she had mental impairments, including an obsessive compulsive disorder and bipolar disorder. *Id.*

According to Plaintiff, she was "upset a lot of the time," and would have bad periods that lasted "about three weeks to a month," during which she cried and contemplated suicide. AR at 26. She did not know of anything that triggered her depression, but believed "it just happens." *Id.* Plaintiff testified she took medication that helped control her depression, but did not completely take it away. *Id.* at 27. Plaintiff said she slept a lot when she was depressed, and estimated she would sleep five or six hours during the day. *Id.* at 30-31. She believed that when depressed, she could concentrate for about fifteen minutes. *Id.* at 32. Further, Plaintiff said she did not want to be around anyone, and did not want to go anywhere, when depressed. *Id.* at 32-33.

Plaintiff reported her obsessive compulsive disorder meant she had to do certain things repeatedly throughout the day, and she mopped and vacuumed the floor "too much." AR at 27. She estimated she mopped her floor "[m]aybe five times a day" because she did not like things on the floor. *Id.* Plaintiff said she had the problem for years, but it had gotten worse and she had to clean more throughout the day. *Id.* As another example of her obsession with cleanliness, Plaintiff said she showered "10, 15 times" a day because she hated the heat, and she was "showering all day long." *Id.* at 29. Plaintiff estimated that she went through four bottles of soap a week and two gallons of bleach a month trying to keep things clean. *Id.* at 30. In addition, Plaintiff believed her family and animals would die if she failed to pray for them when passing by a statue of St. Francis, which she attributed to her disorder. *Id.* at 28.

She testified she did not have friends she saw on a regular basis, and did not have any social activities in which she participated. AR at 33. Plaintiff said she did not have any interests or hobbies other than caring for her animals. *Id.*

5

Vocational expert ("VE") Thomas Dachelet testified after Plaintiff at the hearing. AR at 34. The VE characterized Plaintiff's past relevant work as a waitress as light, with the SVP[2] level either a 3 or 4 "depending upon whether it's a formal or informal setting." *Id.* Plaintiff's work as a supervisor of cashiers and food checkers was characterized as light work, SVP level 7. However, because Plaintiff reported she lifted up to 35 pounds, the VE opined the work "was done at a medium physical demand." *Id.*

The ALJ asked the VE to consider an individual "with no exertional limitations" who was "limited to simple, repetitive tasks" and had "a mild impairment in the ability to manage the stress of a work environment." AR at 35. The VE opined such an individual could perform Plaintiff's pat relevant work, but observed that stress in the *Dictionary of Occupational Titles* "is generally identified only with things like EMT, cops [and] firefighters." *Id.* In addition, the VE opined the individual could perform other work in the national economy including bagger, garment sorter, and grader. *Id.*

Next, the ALJ asked the VE to consider an individual with the same limitations, but who "would miss four or more days of work per month." AR at 35. The VE concluded "the world of work is closed" to such a person. *Id.*

Plaintiff's counsel at the hearing asked the VE to consider a person with the same limitations as in the first hypothetical with the ALJ, but added "the ability to maintain concentration, attention for two hour increments would be difficult." AR at 36. Also, Plaintiff's counsel added the hypothetical worker "wouldn't have the ability to withstand the stress and pressure associated with an eight hour workday and day to day work activity." *Id.* The VE opined such a person would not be able to perform Plaintiff's past relevant work, nor any other work in the national economy. *Id.*

**C.   The ALJ's Findings**

---

[2] **Error! Main Document Only.** "SVP," or specific vocational preparation, is defined as the amount of lapsed time required by a typical worker to learn techniques, acquire information, and develop the facility needed for average performance in a specific job position. Employment and Training Admin., U.S. Dep't of Labor, *Dictionary of Occupational Titles*, (4th ed. rev. 1991), page 1009.
The *Dictionary of Occupational Titles*, which classifies jobs by their exertional and skill requirements, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also* 20 C.F.R. § 404.1566(d)(1).

Pursuant to the five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 15, 2007. AR at 10. Second, the ALJ found Plaintiff's severe impairments included bipolar disorder and obsessive-compulsive disorder. *Id.* The ALJ noted Plaintiff was obese and was a recovering Vicodin addict, but opined these were non-severe impairments. *Id.* Plaintiff's impairments did not meet or medically equal a listing. *Id.* at 11.

After considering "the entire record," the ALJ determined Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels." AR at 11. However, Plaintiff had "mild impairment in her ability to manage the stress of a work and environment" and was "limited to performing simple repetitive tasks." *Id.* With this RFC, Plaintiff was unable to perform past relevant work, but was capable of performing work existing in significant numbers in the national economy. *Id.* at 14. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 15.

## DISCUSSION AND ANALYSIS

**A.    Argument regarding the ALJ's evaluation of the medical evidence is waived.**

Plaintiff asserts, "The ALJ failed to provide legally sufficient reasons to reject the medical evidence and testimony of [Plaintiff] which was consistent with the medical records." (Doc. 19 at 5) (emphasis omitted). However, Plaintiff fails to identify the evidence rejected by the ALJ, or to articulate *how* the ALJ erred in her evaluation of the medical evidence. Rather, Plaintiff focuses upon the ALJ's credibility determination. *See, id.* at 5-13.

The Ninth Circuit "has repeatedly admonished that [it] cannot 'manufacture arguments for an appellant.'" *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)). Rather, the Court will "review only issues with are argued specifically and distinctly." *Id.* Therefore, when a claim of error is not argued and explained, the argument is waived. *See, id*. at 929-30 (holding that party's argument was waived because the party made only a "bold assertion" of error, with "little if any analysis to assist the court in evaluating its legal challenge"); *see also Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding the assertion of error was "too undeveloped to be capable of

assessment"). Because Plaintiff failed to identify or discuss the alleged error in the ALJ's evaluation of the medical evidence, this argument is waived.

///

### B. The ALJ's credibility determination is supported by clear and convincing reasons.

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Here, the ALJ determined Plaintiff's "medically determinable impairments can reasonably be expected to cause the alleged symptoms." AR at 12. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible . . ." *Id.* Plaintiff asserts, "The ALJ improperly assessed her subjective symptom testimony in assessing the residual function capacity." (Doc. 19 at 6).

An adverse finding of credibility must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834.

Factors that may be considered include: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ considered the objective medical evidence, and inconsistent statements made by Plaintiff. AR at 13.

*Objective medical evidence*

Generally, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of the Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit stated, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Here, the ALJ did not base her decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff. Thus, the objective medical evidence was a relevant factor in determining Plaintiff's credibility. However, in citing to the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to make a general statement that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.*

The ALJ observed Plaintiff reported she had "difficulty taking care of herself" and with "concentration and memory." AR at 12. However, treatment notes indicated Plaintiff "progressively improved over time with adjustment of her medications," and her consultative examination with Dr. Fowler "was essentially normal." *Id.* Therefore, because the ALJ did not rely on general findings, but rather identified specific findings from Dr. Middleton and Dr. Fowler, the objective medical evidence was a proper consideration by the ALJ in determining Plaintiff's credibility.

*Inconsistent statements*

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ noted Plaintiff made "a number of inconsistent statements:"

9

> [C]laimant testified that she quit her job as a waitress in late 2007 because she had excessive absences due to depression. However, April 2008 treatment notes prepared by her psychiatrist, Dr. Middleton, reflect that her excessive absences were due to toothaches, and not depression. . . [I]n her application forms, she alleges needing to be reminded how to do simple household chores, such as the laundry or vacuuming. However, during the hearing, she testified to constantly and meticulously cleaning the house—vacuuming or mopping the floor up to five times per day and going through an intricate routine of washing dishes with soap, then bleach, and then soap again.

AR at 13. The ALJ opined "[s]uch contradictory behaviors simply do not add up." *Id.* Plaintiff's inconsistent statements were valid considerations by the ALJ, and are clear and convincing reason for finding she lacked credibility. *Smolen*, 80 F.3d at 1284; *Fair*, 885 F.2d at 604 n.5.

## CONCLUSION AND ORDER

For all these reasons, the ALJ's credibility determination was proper. The ALJ satisfied the burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Therefore, the ALJ's determination that Plaintiff is not disabled must be upheld by the Court, because the ALJ applied the proper legal standards and his findings are supported by substantial evidence. *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Terri Skiko.

IT IS SO ORDERED.

Dated: **May 16, 2012**            /s/ Jennifer L. Thurston
                                                         UNITED STATES MAGISTRATE JUDGE